UNITED STATES DISTRICT COURT
IN THE
MIDDLE DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,　　　　　　　CASE NO: 8:15-CR-492-T-24JSS
　　　　RESPONDED,


　　　v.


JOSE QUINONES CAMACHO,
　　　　PETITIONER,
_____/


### PETITIONER MOTION TO VACATE, SET ASIDE OR CORRECT A SENTENCE PURSUANT TO 28 U.S.C. § 2255


Comes now Petitioner, Jose Quinones Camacho, by and through Pro se, respectfully moves this Honorable Court to vacate, set aside, or correct a sentence pursuant to 28 U.S.C. § 2255. In support of his motion, Petitioner states as follows:


### INTRODUCTION


On or about November 15, 2015, Petitioner was arrested by the United States Coast Guard ("USCG") 130 miles from Guatemala aboard an Equatorian vessel.

Petitioner was Hand-Cuff and placed on iron shackles aboard the "USCG" vessel.


1

On or about December 17, 2015, Petitioner and other 3 co-defendants was alleged to be arrested in Florida for importation of cocaine, although they are arrest in international sea by the U.S.C.G. on November 15, 2015.

On March 2016, the government has obtained a indictment against Petitioner by given false and mislead information to a grand jury.

Petitioner and the other co-defendant was falsely charge with conspiracy to possess with the intent to distribute five kilograms or more of cocaine while aboard a vessel pursuant to 46 U.S.C. § 75003(a) and (b), and 21 U.S.C. § 960(b)(1)(B)(ii) subject to the jurisdiction of the United States.

On June 29, 2016, Petitioner was sentence by the court to a term of 96 months imprisonment for alleged offense against the United States laws.

## STATEMENT OF THE ISSUES

**GROUND 1.** WHETHER PETITIONER CONSTITUTIONAL RIGHTS TO A DUE PROCESS WAS VIOLATED DUE THE ATTORNEY'S INEFFECTIVESS.

Petitioner contends that his constitutional rights to a due process was violated because his attorney errors and omissions has reflect a failure to use the skills, judgment, or diligence of a reasonable competent defense of a lawyer.

Petitioner furthermore contends that the attorney has not act in a competent manner and that his incompetence has serious prejudice Petitioner to a defense. Thus, attorney's ineffectiveness has result in an unreasonable and fundamentally unfair outcome in the proceedings.

STRICKLAD, 466 U.S. at 687, 691-92; See also, GLOVER v. UNITED STATES, 531 U.S. 198, 201 (2001); WILLIAM v. TALYLOR, 529 U.S. 362, 396-99 (2000); UNITED STATES v. BRADLEY, 42 OHIO St. 3d 136 (1986); BLANKEN v. JOHNSON, 118 F.3d 312, 318 (5th cir. 1992).

## A. RIGHT TO DISCOVERY

In Many occasion, Petitioner has request from his attorney the full discovery of the case mention above. However, the attorney failed to do so, by them, violated Petitioner's due process rights.

Only after Petitioner entered in a plea of guilt, his attorney has disclosure a partial of the discovery.

The attorney failed to investigated truly facts of this case, in which including the violation of Petitioner miranda rights were the Puerto Rican agents from the U.S. Cost Guard illegally interview the Petitioner and told him if he talk he will receive a sentence reduction.

The interview was obtained under torture and threats and the miranda warnings was never given to him. Thus, any promises of sentence reduction made by the U.S.Coast Guard was illegal since Petitioner was not even charge with any crime and was in the U.S.C.G. for 1 months at sea.

The only evidence in this case the government chose to destroy by them violated rule 16. They shoot the vessel until it exploded . All Petitioner belongines alone with the vessel documentation were burned to flames. The U.S.C.G. from Puerto Rico advice Petitioner that he was criminal and he does not have any rights.

3

The attorney failure to contact the Equatorian authorities to verify if they have given any permission for the U.S.C.G. to board the Petitioner's vessel since he was 130 miles from Guatemala and that the vessel has a 12x15 flag painted on the backside of the vessel from Equador and have at the time before been destroy by the U.S.C.G. a resgister number.

## B. <u>FAILURE TO TIMELY A NOTICE OF APPEAL</u>

A defendant is denied effective assistance of counsel if he ask his lawyer to appeal perfect his case and the attorney failure to do so by failing to file a timely notice of appeal, brief a statement of appeal, or otherwise. <u>ABLES v. KAISER, 913 F.2d 821, 823 (10th cir. 1990)(citing ELVIST v. LUCEY, 469 U.S. 387, 389, 23 L. Ed. 340, 89 S. Ct. 1715 (1969)</u>. Thus, Petitioner's counsel failed to timely file a notice of appeals  as was request. Consequently to this ineffectiveness, Petitioner was prevented, from expanding the record, and disclosing of numerous facts that were omitted from the court, in which has led to the wrongful conviction and unreasonable sentence.

Therefore, this Court should grant and evidentiary hearing to (1) "remedy a constitutional or statutory violation  (2) to protect judicial integrity by ensuring that the conviction rest on appropriate consideration validly before the true facts and evidence, and (3) to deter future illegal conduct". <u>UNITED STATES v. BARRERR, 1957 F.2d 1089, 1091 (9th cir. 1991)</u>; <u>UNITED STATES v. HASTING, 467 U.S. 499, 505 (1983)</u>.

## C. FAILURE TO OBJECT THE PSR

Petitioner contends that the attorney failed to timely submit his objections concerning the PSR. In fact, the attorney failed to argue for a lesser role basis which Petitioner is entitled to.

The PSR has outline untrue information that serious prejudice Petitioner, and consequently has increase his punishment. Hence, the sentence-even-with-guideline was procedurally unreasonable because the procedure has not been followed. <u>BROOKS</u>. See, <u>UNITED STATES v. CAMPEL, 499 F.3d 1306, 1314 (11th cir. 2007)</u>.

GROUND 2: WHEHTER PETITIONER'S CONSTITUTIONAL RIGHTS WHERE VIOLATED WHERE HE WAS ILLEGALY PLACE IN HANDCUFF AND IRON SHACKLES WITHOUT BEING CHARGED WITH ANY OFFENSE OR EVEN GIVEN MIRANDA WARNING.

Petitioner contends that he was placed in the U.S. government custody, hand-cuff and placed on iron shackles for 30 days at sea without being charged with any offense or even given his substantial rights to a lawyer or a miranda warning rights where he was constantly interviewd by U.S.C.G. agents. Thus, Petitioner was submitted to numerous interviews by the U.S.C.G who was original from Puerto Rico without any miranda warning or the right to a lawyer present during the interview, and was submitted to inhuman cruel and unsual punishment for 30 days at sea without being charge with a crime.

Hence, even if Petitioner was charged with an offense, the charges were illegal because there was no nexus jurisdiction to charge him with the offense against the laws of United States. No human being should endure such

inhuman punishment during 30 days at sea and be force to be a slave to clean the U.S.C.G vessel while placed on shackles.

Petitioner was given an disposable plastic jump suit that could not protect him from the wheather, sun :, rain and cold, and he was allowed bathed once a week. Petitioner could not clean himself after the used of toilet because he was shackled to the others. Important facts of this case was omitted by the government and never disclosed by Petitioner attorney.

Petitioner is zealous to establish how the court was tricked into presiding over and participated in a heinous injustice and waste of public resources in this outrageous kidnap of a entire vessel crew-members in Guatemala waters.

This Honorable Court has confront before with this malicious and illegal misconduct to win cases at all cost. Petitioner will demonstrate on a evidentiary hearing that for 30 days he was dramatic tortured at sea and placed illegally on iron shackles like wild animal and the interrogation was illegal as those questions made to an non english speaker defendant was to elicit an incriminating response.

Petitioner was under serious fear for his life during those 30 days at sea under this torture and cruel treatment without even been charge with a offense. Petitioner is traumatize and was fear death during this illegal arrest, by to him, strange foreign individuals who has placed him on shackles at gun pointed and submitted him on such inhuman condition during those 30 days. Petitioner began into believe that those strange foreign could at any time throw him and the co-defendant at sea with the shackles.

All Petitioner constitutional rights was violated along with his human rights.

The laws in the United States stated that if any person threat or submitted any animal to such cruel condition, the individual would be arrest and will face criminal charges pursuant to animal cruelty. Hence, Petitioner was treated worse than Wild animal at gun pointed and placed in shackles.

Petitioner should not be deprive from his substantial constitutional rights during those 30 days because Petitioner was not charge with any offense or convicted of any crime. HUDSON, v. PALMER, 468 U.S. 517, 524 (1984) VITEK v. JONES, 445 U.S. 480, 493 (1980); WOLF v. MCDONELL, 418 U.S. 539, 556 (1974). Petitioner was submitted to inhuman condition during those 30 days. SURPREMART v. RIVAS, 424 F.3d 5, 19-20 (1st cir. 2005); PALMER v. JOHNSON, 193 F.3d 346, 352 (5th cir. 1999). See also, U.S. Const. Amend. VIII.

Therefore, Petitioner conviction must be vacate and an evidenatiary hearing grant so the record could be expand and those serious omitted facts been disclosure in open court and Petitioner be able to receive a fair justice.

### GROUND 3. WHETHER PETITIONER WAS ILLEGAL ARREST, CHARGE AND CONVICTED IN VIOLATION OF NATIONAL LAWS.

The issue presented in this case on whether Petitioner was illegal arrested in Guatemala waters, 130 miles or 3 hours from Guatemala outline that the prosecution was illegal and without jurisdiction. The evidence was insufficient to support conviction since the government sank the vessel and destroy the evidence in violation of rule 16.

The United States Court of Appeals for the Eleventh Circuit has given the opinion that under BELLAIZAC-HURTADO, 700 F.2d 1245 (11th cir. 2012) that Petitioner convictions was unconstitutional.

Petitioner contends that BELLAIZAC-HURTADO is very much on point and not distinguishable from Petitioner's facts.

The issue in this instant case is whether the Maritime Drug Law enforcement act's a constitutional exercise of congressional power. However, such was recently addressed in BELLAIZAC-HURTADO. Id.

As in BELLAIZAC-HURTADO, Petitioner vessel was entering the territorial seas of Guatemala as he was not more than 130 miles from Guatemala.

Since Petitioner has never had any connection to the United States, Petitioner argue that it can only be charge as an "offense against the law of Nations", if it is subject to Universal Jurisdiction. Since has been determined that the "offense against the law of Nations clause must be interpreted in accordance with principles of customary international law, thus, deciding what conduct may be punished as an "offense against the law of nations", this court should determine whether the conduct at issue violated a "norm of international laws that is "well-establishes" and universally recognized". See VELEZ v. SANCHEZ, 693 F.3d 308, 316 (2nd cir. 2012), and whether customary international law provides some basis for the exercise of jurisdiction over that conduct. See HARTFORD FIRE INS. CO. v. CALIFORNIA, 509 U.S. 764, 815, 113 S. Ct. 2891, 125 L. Ed. 2d 612 (1993)(the law of nations, or customary international law, including limitations on nation's exercise of its jurisdiction to prescribe).

Only conduct that violates a norm of customary international laws and is subject to United States courts jurisdiction under customary international law principles may be prosecuted in the United States courts

8

as an "offense against the law of nations". Customary international laws recognizes five theories of jurisdiction: Territorial; Protective; National; Passive Personality; and Universality. UNITED STATES v. BENITEZ, 741 F.2d 1372, 1316 (11th cir. 1984).

There is a conflict decision in the court over whether the Maritime Drug Law enforcement ("MDLEA") may constitutionally be applied to individuals alleged participate in a scheme to transport drugs wholly outside the United States involving the foreign a judgment for "fraud on the court". RELEVANDER 180 F.3d 1114, 1118 (9th cir. 1999)(citing CHAMBERS v. NASCO INC., 501 U.S. 32, 43-44 115 L. ed. 2d 27, 111 S. Ct. 2193 (1991);

The conviction under the MDLEA violated due process because the government established no nexus between Petitioners or their actions and the United States. As to this argument, the circuit courts has split over whether the Maritime drug Law Enforcement act required a nexus to the United States to comport with due process. (nothing the Ninth circuit's disagreement with the First, Third, Fifth and Eleventh circuits).

Finding that it was bound by previous Eleventh Circuit precedent, the court rejected the argument that due process requires such nexus. UNITED STATES v. CAMPBELL, 743 F.3d 802, 810 (11th cir. 2014).

**THERE IS A SUBSTANTIAL SPLIT OVER THE DUE PROCESS LIMITATIONS ON PROSECUTION UNDER THE MDLEA IN FOREIGN-BOUNDED CASES WITH NO NEXUS TO THE UNITED STATES.**

"The due process clause protects an individual's rights to deprived of lawful power". J. MCINTYRE MARCH., LTD. v. NISCASTRO, 564 U.S. 873, 879 (2011)(plurality op). Thus, in civil litigantion, this court has long

required a nexus or "minimum contacts", between a defendant and the United States before he can be haled into court here.

This case squarely presents that issue in context of a foreign bounded prosecution were Petitioner are foreign citizen and resident, stopped in international waters, and accused of using a foreign-sourced drugs for sale abroad, no connection to the United States. Petitioner case must be reverse.

The law clearly establish that the government must show a nexus to the United States for a prosecution under the act to comport with due process when, as here, the defendant are on a vessel registered in another country and the defendants actions have no ties to the United States. See UNITED STATES v. PERLAZA, 439 F.3d 1149, 1160 (9th cir. 2006)("[w]here the MDLEA is being applied extraterritorially...due process requires the government to demonstrate that there exists a sufficient nexus between the conduct condemned and the United States). UNITED STATES v. KLIMAVICIUS-VILORIA, 144 F.3d 1249, 1257 (9th cir. 1998). See also, UNITED STATES v. GREER, 956 F. Supp. 531, 536 (D.VT. 1997).(requiring a nexus to the United States under the act "to satisfy the requirement" of due process clause").

The arrest was inhuman, without jurisdiction and the prosecution under MDLEA contained no nexus as a matter of constitutional principles, and this court must find a nexus to United States to "ensure that Petitioner is not improperly haled before a court to receive criminal charges by a court lacking lawful authority to do so. KLIMAVICIOUS-VILORIA, 144 F.3d at 1257.

A Defendant [on a vessel registered in a foreign country] would have a legitimate expectation that because he has submitted himself to the laws of [that foreign country], other nations will not be entitle

to exercise jurisdiction without some nexus". UNITED STATES v. CAICEDO, 47 F.3d 370, 372 (9th cir. 1995). Thus, in "[t]he nexus requirement serve the same purpose as the minimum contacts' test in personal jurisdiction". KLIMAVICIUS-VILORIA, 144 F.3d at 1257.

Petitioner contends that there is no nexus jurisdiction in this case. He was KIDNAPPING by the U.S.C.G., tortured and haled illegally to United States and charge falsely with violation of United States laws. UNITED STATES v. YOUSEF, 327 F.3d 56, 111-112 (2nd cir. 2003). See also UNITED STATES v. PRADO, 143 F.Supp. 3d 94, 97-98 (S.D.N.Y. 2015)(rejecting as "insufficient to satify YOUSE'S nexus test" congress's statement in the act that drug trafficking threatens the United States),(appeal pending no: 16-1055, 16-1212, & 16-1214(2nd cir.) See also GREER, 956 F. Supp. at 536 (applying nexus requirement to act pre-YOUSEF). Nexus is required to comport with due process, see UNITED STATES v. MOHAMMAD-OMAR, 323 F. App'x 259, 261-62 (4th cir. 2009).

Fundamental fairness is not advanced by disparate treatment based solely on what port of entry a defendant is brought to-a decision over which he often has no control. See 46 U.S.C. § 70504 (venue "Shall be...the district at which the person enters the United States"). Under the current laws, the government would have to demonstrate a nexus to the United States by preponderance of the evidence. However, Petitioner was Kidnap from international waters, torture for 30 days, and haled to United States after the U.S.C.G. exploded his vessel and falsely charge him with violation of the United States laws.

This issue is serious and important because the government continue to violated they own laws. and the extraterritorial criminal proceedings have been increasing in frequently and in recent years. Mostly all the

hundreds vessels arrests by the U.S.C.G. has ended with the vessel been

sunk ˙ by the U.S. Coast Guard themselves, in which are clear violation

of the United States pursuant to pollute the seas. The number of suspects

transfer to the United States for prosecution set records. And because

many, if not all, of those interdictions occur in international waters,

it is often the case that, as here, the defendant are illegal placed

in iron shackles under the U.S. Coast Guards, but not read their MIRANDA

warning until days, weeks, or months later when they are transported

to the United States under such inhuman condition and under outrageous

tortured. See, BEHIND THE COAST GUARD'S BILLION-DOLLAR BUSTS, MEN'S JOURNAL,

http://www.mensjournal.com/adventure/articles/drug-war-on-the-high-seas-

behind-the-coast-guards-billion-dollar-busts-w213087. (nothing that

"[o]nce apprehended, detainees can be held at sea for weeks or months

until they get transfer to the U.S. for prosecution. Some may not touch

land for 100 days").

       Not only have the number of criminal proceedings based on extrate-

rritorial applications of U.S. criminal status been increasing in frequency

in recent years, but the number of statutes with extraterritorial

application similar to the MDLEA have also been increasing. See, e.g.,

Biological Weapons Anti-Terrorism Act of 1989, 18 U.S.C. § 175; Explosives

Transportation Acts, 18 U.S.C. § 832; Antiterrorism and Effective Death

Penalty Act of 1996, 18 U.S.C. §§ 2332, 2332A, 2339B, 2339C, & 2339D;

USA Patriot Improvement and Reauthorization Act of 2008, 18 U.S.C. §

1596. As the number of both criminal statutes with extraterritorial

application and prosecution under those statues increases, it becomes

increasingly important for this court to provide clarity about the due

process limits on each.

Previous cases to present this "long-standing conflict" over the due process requirements when the MDLEA is applied extraterritorially had fatal vehicle flaws not present here. Br, for the United States in Opp'n at 11, all KASSAR v. UNITED STATES, no. 11-784(Apr. 6, 2012) (acknowledging the "long-stading conflict...between the Ninth Circuit and several other circuits"). For example, some cases to previously raise this circuit split involved defendant who had a sufficient nexus because the drugs they were transporting were "destined to the United States," KLIMAVICIUS-VILORIA, 144 F.3d at 1257. See, e.g., UNITED STATES v. BALLESTAS, 795 F.3d 138, 148 (D.C. Cir. 2015)("BALLESTAS'S factual stipulations establish that he was part of an international drug smuggling organization that used stateless vessel to transport drugs...bound ultimately for the United States")., cert. denied 136 S. Ct. 1229 (2016). Cf. LAWRENCE, 727 F.3d at 396 (under parallel criminal statute, defendant met nexus test because he was a resident of Houston, Texas), cert, denied 134 S. Ct. 1340 (2014); MOHAMMAD-OMAR, 323 F. App'x at 262 (under similar criminal statute, defendant met nexus test because he knew drugs "were destined for the United States"), certi.·ldenied 558 U.S. 908 (2009), Because the drugs they were trafficking were destined for the United States, those defendants arguably had sufficient minimum contacts for due process purposes.

Other denied petitions raised the question presented in the context of drug trafficking on a stateless vessel. See, e.g., UNITED STATES v. CAMPBELL, 743 F.3d 802, 804 (11th cir. 2014)(stateless vessel), cert. denied 135 S. Ct. 704 (2014); TAM FUK YUK v. UNITED STATES, 430 F. App'x 794, 794 (11th cir. 2011)(same), cert.denied 132 S. Ct. 1536 (2012); MARTINEZ-HIDALGO, 993 F.2d at 1056 (same), cert. denied 510 U.S. 1048(1994).

But there is no circuit split over whether due process requires a nexus for prosecutions of stateless vessels. See PERLAZA, 439 F.3d at 1161 ("if a vessel is deemed stateless, there is no requirement that the government demonstrate a nexus between those on board and the United States before exercising jurisdiction over them.")

Yet other Petitioner were denied because the petitioners had failed to raise and adequately preserve the due process argument below. See Br. for the United States in Opp'n at 10, CARDALES v. UNITED STATES, no. 98-9526 (July 23, 1999)("[T]his case is inappropriate for review because petitioner failed to raise his claim that the Maritime Act required proof of a nexus...in district court."), cert. denied 528 U.S. 838 (1999).

This case, by contrast, squarely presents for this Court's resolution the issue of the due process limits of extraterritorial application of the MDLEA when foreign defendant have no nexus to the United States. Petitioners are foreign residents who were operating a foreign-registered vessel and transporting foregeign-purchased drugs to a foreign country for sale. There was not evidence presented at trial of any nexus to the United States. Thus, if a nexus is required, Petitioner's conviction would be overturned.

### DUE PROCESS REQUIRES THAT THE GOVERNMENT DEMONSTRATE A NEXUS BETWEEN A DEFENDANT AND THE UNITED STATES FOR CRIMINAL PROSECUTION UNDER THE MDLEA

1. The fifth Amendment provides that "[no] person shall be... deprived of life, liberty, or property, without due process of law." U.S. Const. amend.V. Unlike the Fourth Amendment, which applies only to "the people" of the United States, the Fifth Amendment applies to "persons" broadly, suggesting

that it accompanies extraterritorial extension of U.S. criminal law to foreign person abroad. See UNITED STATES v. VERDUGO-URQUIDEZ, 494 U.S. 259, 266, 271-72 (1990)(plurality op.)(holding that the Fourth Amendment's "the people" "refers to a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community," in part by contrasting "the people" with the broader "person[s]" language of the Fifth Amendment).

2. In the civil context, the Supreme Court has warned that due process precludes federal courts from exercising jurisdiction to adjudicate foreign-bounded disputes because due process requires a nexus to the forum. See, E.G., DAIMLERCRYSLER AG v. BAUMAN, 134 S. Ct. 746, 751 (2014) (suit in California by foreign plaintiffs against foreign defendant for actions taken abroad would violated due process). In the criminal context, due process should require no less. See KLIMAVICIUS-VILORIA, 144 F.3d at 1257 (analogizing role of due process clause in criminal context to the "minimum contacts' test in personal jurisdiction"); LEA BRILMAYER AND CHARLES NORCHI, FEDERAL EXTRATERRITORIALITY AND FIFTH AMENDMENT DUE PROCESS, 105 HARV. L. REV. 1217, 1242 (1992)(arguing that due process should restrict the extraterritorial application of U.S. jurisdiction).

In civil litigation, due process requires that a defendant have the requisite "minimum contacts" with the forum to justify haling him into court there. See HELICOPTEROS NACIONALES DE COLOMBIA, S.A. v. HALL, 466 U.S. 408, 414 (1984). This requirement stemmed from concerns about comity between the states and providing adequate notice to a defendant, such that courts may only hear those disputes that will not "offend

traditional notions of fair play and substantial justice". Int'l shoe
Co., 326 U.S. at 316 (quoting MILLIKEN v. MEYER, 311 U.S. 457, 463 (1940)).

The same principles require a nexus to the United States-the
equivalent of minimum contacts-for extraterritorial criminal prosecution.
See PERLAZA, 439 F.3d at 1168 ("the nexus requirement....serves the
same purpose as the minimum contacts test in personal jurisdiction.").
Just as due process's personal jurisdiction requirement limits the ability
of a federal court in one state to resolve a dispute involving a resident
of a different state if that resident has not connections to the forum
state, See HELICOPTEROS NACIONALES, 466 U.S. at 414, the due process's
nexus requirement limits the ability of the United States to adjudicate
a dispute involving a citizen of a foreign country, absent a nexus between
that individual or his conduct and the United States, see CAICEDO, 47
F.3d at 372 ("A defendant [on a ship registered in a foreign country]
would have a legitimate expectation that because he has submitted himself
to the laws of [that foreign country], other nation will not be entitled
to exercise jurisdiction without some nexus.").

That the nation in which the vessel is registered consents to
the United States' exercise of jurisdiction "does not eliminate the
nexus requirement," which is a constitutional limitation on the federal
courts. PERLAZA, 439 F.3d at 1169. See also UNITED STATES v. ANGULO-
HERNANDEZ, 576 F.3d 59, 60 (1st cir. 2009)(TORRUELLA, J., dissenting
from denial of en banc review)(calling for the First Circuit to join
the Ninth Circuit in requiring nexus, and arguing that "[t]he consent
of the flag nation is not material to a due process analysis focused
on our government's power over a foreign individual defendant"). "For
a United States court to properly exercise jurisdiction, the government

16

still need to establish some detrimental effect within, or nexus to the United States." PERLAZA, 439 F.3d at 1169.

It is undisputed that no such nexus exist to tie this foreign-bounded case to the United States such that it may constitutionally exercise jurisdiction over Petitioner.

Petitioner are not citizen of the United States and not resident of the United States. The boat they were operating was not registered in the United States, rather was registered in another country. The drugs that was transported was not with the destination of United States. And Petitioner was stopped in international water 130 miles from Guatemala.

There is no evidence presented in court of any nexus to the United States. Absent any nexus, their criminal prosecutions violated due process. PERLAZA, 439 F.3d at 1160. Were it otherwise, the Coast Guard could patrol all the international waters of the world and transport back to United States for prosecution anyone found transport drugs. If that is insufficient to grant federal courts jurisdiction over a civil matter, see, DAIMELERCHRYSLER AG, 134 S. Ct. at 751, it for criminal prosecution as well.

Petitioner was illegal kidnap tortured under a gun pointed and placed on iron shackles for numerous days without been given any miranda warning and later haled to United States Court to be illegal charged of a violation against United States laws, and without a nexus. Petitioner conviction is clearly unconstitutional and must be vacated and dismiss.

GROUND 4. WHETHER PETITIONER IS ENTIRE TO A TWO LEVEL
REDUCTION FOR MINOR ROLE [AMENDMENT 794].

The ineffectiveness of the attorney has preclude Petitioner from argue the minor role participation. Thus, the record of this case display that Petitioner do qualify as he does not have any interest in the drugs or the conduct.

On November 1, 2015, the Sentence Commission amended the commentary to § 3B1.2 to clarify that applying the minor role adjustment is such a manner is contrary to its intent, and wrong.

A sentence-even a within-guideline sentence-is "procedurally unreasonable" if "it is the product of a procedure that does not follow BOOJE'S REQUIREMENTS". UNITED STATES v. CAMPBELL, 491 F.3d 1306, 1314 (11th cir. 2007). In GALLY v. UNITED STATES, 552 U.S. 38, 51 (2007) the Supreme Court explained that in reviewing any sentence post-BOOKER, a court must first ensure that the court committed no procedural error, such as failing to improperly calculating the guideline range". Id. 128 S. Ct. at 597.

While admittedly, the guideline are not mandatory after BOOKER, the Court is still required to properly "consider" the sentence recommended by the guideline as one of the several factors enumerated in 18 U.S.C. § 3553(a). And indeed, for the court to properly "consider" the guideline at sentencing, the court must "calculate correctly the sentencing range prescribed by the guideline". UNITED STATES v. CRAWFORD, 407 f.3d 1174, 1178-1179 (11th cir. 2005)(emphasia added). If the court icorrectly applies the guideline at sentencing, the court must vacate the sentence. CRAWFORD, 407 f.3d at 1178-1183; UNITED STATES v. JORDI, 418 F.3d 1212,

18

1215 (11th cir. 2005); UNITED STATES v. SCOTT, 447 F.3d 1365 (11th cir. 2006); UNITED STATES v. WHITSON, 597 F.3d 1218, 1219, 1223 (11th cir. 2010). Particular "where the district court chooses to sentence within the range prescribed by the guideline", an error in their calculation cannot be harmless". UNITED STATES v. BARNER, 572 F.3d 1239, 1248 (11th cir. 2009).

In denying Petitioner 2 level reduction for minor participant authorized in § 3B1.2(b), the court here incorrect applied that guideline by in no one single evidence since the evidence was destroy by the Coast Guard. Thus, Petitioner was only a crew-member on the vessel without any interest in the drugs.

On November 1, 2015-The Sentencing Commission amended the commentary to § 3B1.2 to clarify that applying the minor role adjustment is such a manner is contrary to its intent, and wrong.

In amendment 794, the Commission did not change the language of the guideline itself, or application no t 5 to § 3B1.2 which defines "minor role participation" as defendant who is "less culpable than most other participants in the criminal activity". However, the commission substantially amended two other application notes (Note 3(A) and 3(c)) in order to correct the approach of circuits likely Eleventh that had wrongly denied minor adjustment to "otherwise eligible defendant" for years, simply because "the defendant was considered "integral" to the successful commission of the offense". U.S.S.G. § App. C, amendment 794 ("reason for amendment").

Prior to the amendment, the Commission noted, those application notes discouraged court from granting the adjustment to many "otherwise eligible defendants", by stating:

## APPLICABILITY OF ADJUSTMENT

(A) SUBSTANTIAL LESS CULPABLE THAN AVERAGE PARTICIPANT.

This section provides a range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than average participant.

A defendant who is accountable under § 1B1.3 (relevant conduct) only for the conduct in which the defendant personally was involved and who performs a limited function in concerted criminal is not precluded from consideration for an adjustment under this guideline. For example, a defendant who is convicted of a drug trafficking offense, who role in that offense was limited to transporting or storing drugs and who is accountable under § 1B1.3 only for the quantity of drugs the defendant personally transported or stored is not precluded from consideration for an adjustment under this guideline.

In this case, the record reflect that Petitioner was only a "mule".

Petitioner was only a crew-member in the vessel, without any interest on the destination of the drugs or any interest on the act or crime.

"

"

"

(C) FACT_BASED DETERMINATION.

The determination whether to apply section (a) or subsection (b), or an intermediate adjustment, is based on the totality of the circumstances and involves a determination that is heavily dependent upon the fact of the particular case.

To encourage application of mitigating role adjustment would need indeed be granted in "otherwise appropriate circumstances", the Commission amended the above application notes (effective November 1, 2105), to state:

(A) SUBSTANTIALLY LESS CULPABLE THAN AVERAGE PARTICIPANT.

This section provides a range of adjustment for a defendant who plays a part in committing the offense that makes him susbstantially less culpable than the average participant in the criminal activity.

A defendant who is accountable under § 1B1.3 (relevant conduct) only for the conduct in which the defendant personally was involved and who performs a limited function in the criminal activity may receive an adjustment under this guideline. For example, a defendant who is convicted of a drug trafficking offense, whose participation in that offense was limited to transporting or storing drugs and who is accountable under § 1B1.3 only for the quantity of drugs the defendant personally transporting or stored may receive an adjustment under this guideline.

Likewise, a defendant who is accountable under § 1B1.3 for a loss amount under § 2B1.1 (theft, property destruction, and fraud)

that greatly exceeds the defendant's personal gain from a fraud offense or who had limited knowledge of the scope of the scheme <u>may receive an adjustment under this guideline</u>... .

### (C) <u>FACT BASED DETERMINATION</u>.

The determination whether to apply subsection (a) or subsection (b), or an intermediate adjustment, is based on the totality of the circumstances and involves a determination that is heavily dependent upon the facts of the particular case.

<u>IN DETERMINING WHETHER TO APPLY SUBSECTION (a) OR (b) AN INTERMEDIATE ADJUSTMENT, THE COURT SHOULD CONSIDER THE FOLLOWING NON-EXHAUSTIVE LIST OF FACTORS</u>:

(i) The degree to which the defendant understood the scope and structure of the criminal activity;

(ii) The degree to which the defendant participated in planning or organizing the criminal activity;

(iii) The degree to which the defendant exercised decision making authority or influenced the exercise of decision making authority;

(iv) The nature and extent of the defendant's participation in the commission of the crime activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;

(v) The degree to which the defendant stood to benefit from the criminal activity.

For example, a defendant who does not have a propriety interest in the criminal activity and who is simply being paid to perform certain task should be considered for an adjustment under this guideline. §3B1.2, comment. (November 1, 2015)(emphasis added to highlight changed language).

While amendment 794 in its entirely is included in addendum 3 to this motion, in its most pertinent part, the Commission explained:

[T]he amendment addresses cases in which the defendant was "integral" or "indispensable" to the commission of the offense. Public comment suggested, and a review of case law confirmed, that in some cases a defendant may be denied a mitigating role adjustment solely because he or she was "integral" or "indispensable" to the commission of the offense. ...However, a finding that the defendant was essential to the offense does not alter the requirement, expressed in note 3(A), that the court must assess the defendant's culpability relative to the average participant in the offense. Accordingly, the amendment revises the commentary to emphasize that "the fact that a defendant may receive a mitigating role adjustment, if he or she is otherwise eligible.

The amendment also revises two paragraphs in note 3(A) that illustrate how mitigating role interacts with relevant conduct principles in § 1B1.3. Specially, the illustration provided that certain types of defendants are "not precluded from consideration for" a mitiga-ting role adjustment. The amendment revises these paragraphs to states that these type of defendant "may receive" a mitigating role adjustment.

The Commission determined that the double negative tone ("not precluded")
may have had the unintended effect of discouraging court from applying
the mitigating role adjustment in otherwise appropriate circumstances.

Finally, the amendment provides a non-exhaustive list
of factors for the court to consider in determining whether to apply
a mitigating role adjustment, and if so, the amount of the adjustment.
The factors direct the court to consider the degree to which the defen-
dant understood the scope and structure of criminal activity, partici-
pated in planning or organizing the criminal activity, and exercised
decision making authority, as well as the acts the defendant performed
and the degree to which he or she stood to benefit from the criminal
activity. The commission was persuaded by public comment and a detailed
review of cases involving low-level offenders, particularly in fraud
cases, that providing a list of factors will give the courts a common
framework for determining whether to apply a mitigating role adjustment
(and, if so, the amount of the adjustment) and will help promote consis-
tency.

The amendment further provides, as an example, that a
defendant who does not have a proprietary interest in the criminal
activity and who is simply being paid to perform certain tasks should
be considered for a mitigating role adjustment. U.S.S.G. App. C, amed-
794 ("reason for amendment").

In light of the above "reason for amendment", there can
be no doubt that amendment 794 was a "clarifying" amendment-not a
substantive changes to the guideline. UNITED STATES v. JERCHOWER, 631
F.3d 1181, 1185-1187 (11th cir. 2011)(in assessing whether an amendment

24

to the guidelines is substantive or clarifying, the court considers whether the amendment alters the text of the guideline or alters only the commentary, "an amendment that alters only the commentary suggests a clarification", nothing as further evidence that the amendment is clarifying, the Commission explanation that its to "address" a circuit conflict, and the amendment was "by way of a supplement rather than an alternation to the existing commentary").

Because "clarifying" amendment "provide persuasive evidence of how the sentencing Commission originally envisioned application of the relevant guideline," Id. att 1184 (citing UNITED STATES v. DESCENT, 292 F.3d 703, 707-08 (11th cir. 2002)); UNITED STATES v. STINSON, 30 F.3d 121, 122 (11th cir. 1994). In fact the Supreme Court has held "[a]mended commentary is binding on federal court even though it is not reviewed by congress, and prior judicial construction of a particular guideline cannot prevent the commission from adopting a conflicting interpretation", so long as its "does not run a foul of the constitution or a federal statute, and is not "plainly erroneous or inconcistent" with the text of the guideline congress approved. STINSON v. UNITED STATES, 508 U.S. 36, 46-47 (1993). The commission's amended commentary to § 3B1.2 must be treated as "authoritative" here. It is clear from the commission's newly-clarified, now-controlling commentary that the court misapplied § 3B1.2 at Petitioner's sentencing.

The provision, as now clarified, by failing to consider: (1) whether Petitioner understood the slop and structure of the criminal activity; (2) whether Petitioner had participated in the planning or organizing of the criminal activity (there was not evidence here that he had, been leader rather than driver (3) whether Petitioner exercises

any decision making authority or influences the exercise of decision-making authority (there was no evidence in that regard here either); or (4) whether Petitioner had a "proprietary interest, was merely being paid to perform "certain tasks".

Therefore, Petitioner is entitled to the minor role participation.


## CONCLUSION


This Honorable Court will be able to clearly see that this entire prosecution was illegal, repugnant and complete inhumane.

Petitioner was submitted to a inhumane torture condition at gun pointed and with Hand-Cuffs and Iron Shackles placed on him for numerous painfully days that will be forever remember. Those acts and condition in which Petitioner has endure for numerous days has nothing to do with the justice that this country so promoted each and every day. This was a grossly and repugnant prosecution that has outrageous violated all Petitioner constitutional rights and human rights that the entire case must be vacated and dismisses.

Therefore, Petitioner respectfully request a emergency evidentiary hearing pursuant to rule 8 so those issues mention above be resolve this repugnant inhuman prosecution.

<div style="margin-left:50%">

Respectfully Sybmitted,
_Josue Quinones_
JOSE QUINONES CAMACHO
REG NO: 65116-018
D. RAY JAMES C.F.
P.O. BOX 2000
FOLKSTON GA 31537

</div>

## PROOF OF SERVICE

I Jose Quinones Camacho, do certify that this March 12, 2017, I have served the attached motion pursuant section 2255 on the Middle District of Florida in the above proceeding. I have served the motion via United States Postal Service (USPS) first-class mail through, D. Ray James C.F. legal mail.

QUINONES JoSUe
JOSE QUINONES CAMACHO
REG NO: 65116-018
D. RAY JAMES C.F.
P.O. BOX 2000
FOLKSTON GA 31537